1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | D.C. Number: 1:06-CR-41 AWI |
|     ) | |
|     **Plaintiff-Appellee**,     ) | [Mag. No. 06-MJ-0063  WMW] |
|     ) | |
|     **v.**     ) | **ORDER ON APPELLANT'S** |
|     ) | **APPEAL** |
| **KEVIN VASQUEZ,**     ) | |
|     ) | |
|     **Defendant-Appellant**.     ) | |
| _____) | |

16    This is an appeal from a conviction of Kevin Vasquez ("Vasquez") for simple assault

17  against Gayle Rousseau in violation of 18 U.S.C. § 113(a)(5).  The assault occurred in Yosemite

18  National Park.  On January 23, 2006, after a bench trial, Magistrate Judge Beck imposed a

19  $10.00 statutory assessment, twenty-four months probation, and 200 hours of community service.

20  Prior to conviction, Magistrate Judge Wunderlich denied Vasquez's motion to dismiss.  Vasquez

21  appeals the denial of his pretrial motion to dismiss and requests that his conviction be overturned

22  and the charges against him dismissed.  Vasquez's conviction will be affirmed.

23

24                            **SCOPE OF REVIEW**

25    An appeal from a criminal conviction imposed by a Magistrate Judge lies with a "judge of

26  the district court and must first be brought in the district court before prosecution in the court of

27  appeals." United States v. Soolook, 987 F.2d 574, 575 (9th Cir. 1993); see also 18 U.S.C. §

28  3402.  The district court's review of the magistrate's judgment is governed by the same standards

1  as an appeal from a judgment of a district court to the court of appeals.  Fed. R. Crim. P.

2  58(g)(2)(D);United States v. McFarland, 369 F.Supp.2d 54, 56-57 (D. Me. 2005); United States

3  v. Fautanu, 751 F.Supp. 1420, 1421 (D. Haw. 1990); United States v. Ramirez, 555 F.Supp. 736,

4  738-739 (E.D. Cal. 1983).  In other words, the district court "is to apply the same scope of review

5  as a United States Circuit Court of Appeals would apply in considering an appeal of a judgment

6  from a United States District Court."  United States v. Charrington, 285 F. Supp. 2d 1063, 1066

7  (S.D. Ohio 2003).  In the Ninth Circuit, the appellate court may affirm the district court's

8  decision on any grounds supported by the record.  United States v. Cortez-Arias, 403 F.3d 1111,

9  1114 n.7 (9th Cir. 2005), *as amended by*, 425 F.3d 547 (9th Cir. 2005); United States v. Allen,

10  153 F.3d 1037, 1045 (9th Cir. 1998).

11

12                                            **BACKGROUND**

13          On Sunday, May 8, 2005, at approximately 11:00 a.m., National Park Service Rangers

14  Foster and Maurer were dispatched to campsite 103 of Housekeeping Camp at Yosemite

15  National Park ("the Park") to respond to a domestic disturbance in progress.  See E.R. at 31.[1]

16  Upon arrival at the campsite, Ranger Foster discovered Rousseau sitting on her bed crying and in

17  a state of distress.  Id.  Rousseau said that she had been beaten up by her boyfriend, Vasquez, and

18  that he had driven off leaving herself and her two children.  Id.  The rangers made a cursory

19  assessment of the situation and issued a Be On the Lookout alert to Park law enforcement for

20  Vasquez.  Id.  Ranger Maurer interviewed a neighboring camper who was an eyewitness.  Id.

21  The eyewitness told Maurer that she observed a domestic quarrel taking place.  Id. at 31-32.  She

22  saw Rousseau remove an ice chest from Vasquez's truck and throw it to the ground.  Id. at 32.

23  Vasquez responded by pushing Rousseau against the vehicle and holding her there against her

24  will.  Id.  According to the eyewitness, Rousseau then called out for the eyewitness to call a

25

26  _____

27  [1]"E.R." refers to the Appellant's record excerpts.  The number following "E.R." refers to the document
    bates stamp.

28                                                2

1   ranger because Vasquez was going to beat her up.  Id.  The eyewitness ran to the camp store and

2   asked for help.  Id.  Rousseau's account of events coincided with that of the eyewitness.  Id.

3        Ranger Foster obtained Vasquez's cell phone number from Rousseau and eventually

4   contacted Vasquez at 2:30 p.m.  Id.  Over the course of several call-backs, Foster spoke several

5   times with Vasquez for a little more than 30 minutes total.  Id.  Vasquez told Foster that he was

6   in Fresno and was heading home to San Diego.  Id.  Ranger Foster believed that Vasquez was

7   giving dishonest answers to questions, and Vasquez told Foster that Vasquez knew that rangers

8   had been called to the scene, but left since he had done nothing wrong and did not need to speak

9   to the rangers.  Id.  Foster believed that probable cause existed that Vasquez had committed the

10  felony of willful infliction of corporal injury under California Penal Code § 273.5(a).  Id.

11       Ranger Tucker contacted the Fresno Police Department.  Id.  Tucker informed the Fresno

12  police that Vasquez was in the area and requested that the Fresno police lookout for Vasquez and

13  effect a stop and arrest.  Id.  At some point, Foster also informed Vasquez that Fresno police

14  were instructed to arrest Vasquez.  Id.  Later, Vasquez informed Foster that he was at a gas

15  station in Fresno.  Id. at 32.  Foster had a Fresno patrol unit dispatched to the station, but upon

16  arrival, Vasquez was gone.  Id.

17       About 30 minutes later, Foster received a call from Fresno Officer Holguin.  Id.  Holguin

18  stated that Vasquez had approached him, said that he had been in an argument with his girlfriend

19  in the Park, and wanted Holguin to take pictures of Vasquez's face and neck.  Id.  Foster

20  explained to Holguin the events leading to the phone call and requested that Holguin arrest

21  Vasquez for violating Penal Code § 273.5.  Id.  At Holguin's request, Park dispatch sent a

22  teletype to the Fresno Police Department to hold Vasquez.  Id.  Vasquez was taken into custody

23  in Fresno and Holguin informed Foster where Vasquez was held.  Id.  Rangers were dispatched

24  to transport Vasquez back to the Park.  Id.

25       Rangers arrived in Fresno and then transported Vasquez back to the Park.  The rangers

26  and Vasquez arrived at the park at approximately 7:30 p.m. and Vasquez was booked shortly

27

28                                        3

1  thereafter.  Id. at 37.  Vasquez was not arrested with a warrant, and was not taken to the

2  magistrate judges who sit in the Fresno Federal Courthouse.  Vasquez was not presented to the

3  Park magistrate judge on the next day, Monday, May 9, 2005.[2]  Vasquez was presented to the

4  Park magistrate judge and met with a Federal Defender at approximately 10:00 a.m. on Tuesday,

5  May 10, 2005.

6          Vasquez later filed a motion to dismiss the charges against him on the basis that: (1)

7  Vasquez's initial warrantless detention at the behest of Ranger Foster was illegal and in violation

8  of *Dunaway v. New York*, 442 U.S. 200 (1979) and *United States v. Hensley*, 469 U.S. 221

9  (1985); and (2) the delay between Vasquez's arrest and his presentment violated Rule of

10  Criminal Procedure 5 ("Rule 5"), the *Mallory* rule,[3] the Fourth Amendment, and the local

11  Criminal Justice Act plan ("local CJA Plan").  Magistrate Judge Wunderlich denied the motion

12  to dismiss and found that the Park Service did nothing unusual or illegal, that Ranger Foster had

13  probable cause to arrest Vasquez for a felony under California Penal Code § 273.5, that the

14  federal defender's office was notified on Monday, that Vasquez was presented within

15  *McLaughlin*'s 48-hour rule,[4] and that no violation occurred that would cause dismissal of the

16  case.  See MDT at 21-22.[5]

17          After denial of the motion to dismiss, Vasquez was eventually found guilty of

18  misdemeanor assault by Magistrate Judge Beck following a bench trial.  Vasquez now appeals

19  the denial of his motion to dismiss, requests that his conviction be overturned, and requests that

20  the matter be remanded to the Magistrate Judge to order dismissal of the charges with prejudice.

21  For the reasons that follow, Vasquez's appeal will be denied and his conviction affirmed.

---

[2]The transcript of the hearing on the motion to dismiss indicates that the Park Magistrate Judge intended to be present during the afternoon of May 9, 2005, but due to personal circumstances, became unavailable until Tuesday, May 10, 2005.  See Motion to Dismiss Transcript at 21.

[3]"The *Mallory* rule" refers to *Mallory v. United States*, 354 U.S. 449 (1957).

[4]*County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991) created a presumption that delays in the presentment of arrestees of less than 48-hours are presumptively valid under the Fourth Amendment.

[5]"MDT" stands for Motion to Dismiss Transcript, which is document number 40 in the Court's docket.

4

## DENIAL OF MOTION TO DISMISS

*Appellant's Argument*

Vasquez argues that his detention by the Fresno Police Department at the request of Ranger Foster was an arrest.  However, neither probable cause nor exigent circumstances justified the arrest.  In *Dunaway*, the Supreme Court found a violation of the Fourth Amendment where, at the request of another officer, police officers picked up Dunaway and transported him to the station for questioning.  The Supreme Court noted the absence of a warrant and probable cause, and found that because the detention was so severe, it could not be justified on the basis of reasonable suspicion.  Also, in *Hensley*, the Supreme Court held that where a wanted poster/flyer creates reasonable suspicion that a particular individual is wanted in connection with a crime, the Fourth Amendment permits only a brief stop to ask questions or check identification.  In the absence of probable cause, such a stop can be no more intrusive than that which would have been permitted by the agency that issued the poster/flyer.  Here, Vasquez's detention by the Fresno police rose to the level of an arrest, but the arrest was made without a warrant or exigent circumstances or probable cause.  The probable cause requirement demanded that the rangers investigate further before ordering the arrest of Vasquez.  Thus, his arrest was illegal.

With respect to continued detention and late presentment, Vasquez was detained in Fresno on Sunday.  There is a federal court in Fresno, yet Vasquez was driven back to the Park and was not presented to the magistrate judge in the Park until Tuesday.  Further, Vasquez was not provided access to a Federal Defender until 10:00 a.m. on Tuesday May 10, 2005, which was the time of his presentation to the magistrate judge.  Rule 5 requires that an arrested person be taken to a judicial officer without unnecessary delay.  Under *Mallory*, an arrested individual must be arraigned as quickly as possible so that he may be advised of his rights and probable cause may be determined.  Similarly, the Fourth Amendment requires that anyone arrested for a crime without a warrant is entitled to a prompt judicial review of probable cause.  Under *McLaughlin*, there is a presumption of constitutionality for presentment delays of under 48-hours, but that presumption may be overcome.  Finally, the CJA Plan for the Eastern District of California

5

1    requires that government prosecutors ask those in custody whether they are financially able to

2    representation and notify the Federal Public Defender Officer if the answer is no.  The Public

3    Defender is then to meet with the individual and if appointment seems likely, to arrange to have

4    the person promptly presented to a magistrate judge for determination of financial eligibility and

5    appointment of counsel.

6        Here, the evidence shows that Vasquez was not promptly presented to a magistrate judge

7    without unnecessary delay.  Vasquez experienced an approximately 44-hour delay between his

8    warrantless arrest in Fresno and his presentment to the Yosemite magistrate court.  Vasquez also

9    experienced almost a 24-hour delay from the regular duty docket in the magistrate court in

10   Fresno to his presentment in the Park.  Given the proximity of Fresno federal magistrates, the

11   delay was unnecessary and unreasonable.

12       Vasquez argues that the statements obtained from Vasquez during the delay are not

13   critical to the Government's case.  Further, there is an on-going failure to present defendants to

14   the magistrate in the Park.  In order to assure prompt presentment requirements are not abused,

15   reversal of the conviction and dismissal with prejudice is the only adequate remedy.  Otherwise,

16   Vasquez will be left without a remedy.

17       *Appellant's Opposition*

18       The government more or less adopts the rulings of the Magistrate Judge.  The

19   Government argues that there was probable cause to believe that Vasquez had violated §

20   273.5(a), Vasquez was presented within the 48-hour rule of *McLaughlin*, suppression and not

21   dismissal is the remedy for violations of Rule 5, Vasquez's flight to Fresno (i.e. his own conduct)

22   accounts for a significant portion of the delay, and Vasquez validly waived his rights following

23   *Miranda* warnings.

24       *Discussion*

25       Vasquez requests that the Court reverse his conviction because his arrest violated the

26   Fourth Amendment and his continued detention and the delay in presentment violated Rule 5, the

27   Fourth Amendment, and the local CJA Plan.  The remedy of dismissal, however, is unavailable.

28

1    The Court will assume without deciding that Vasquez's detention by the Fresno police, at

2   the request of Ranger Foster, constituted an arrest.[6]  The Court will also assume without deciding

3   that there was no probable cause to arrest Vasquez for violation of California Penal Code §

4   273.5(a), which was the violation identified by Ranger Foster in both his declaration in

5   opposition to Vasquez's motion to dismiss and the teletype sent to the Fresno police.[7]

6    However, this case was tried before a Magistrate Judge and Vasquez was convicted of

7   simple assault.  The Supreme Court has held that an illegal arrest or detention does not void a

8   subsequent conviction nor act as a defense to a valid conviction.  United States v. Crews, 445

9   U.S. 463, 474 (1980); Gerstein v. Pugh, 420 U.S. 103, 119 (1975); United States v. Sitton, 968

10   F.2d 947, 954-55 (9th Cir. 1992); United States v. Studley, 783 F.2d 934, 937 (9th Cir. 1986);

11   see also United States v. $191,910.00 in United States Currency, 16 F.3d 1051, 1064 (9th Cir.

12   1994).  Although a conviction will not be infirm simply because an illegal arrest occurred,

13   evidence that is obtained as a result of an illegal arrest is to be suppressed.  Sitton, 958 F.2d at

14   954.  As the Supreme Court has explained,

15       The exclusionary principle of *Wong Sun* and *Silverthorne Lumber Co.* delimits
        what proof the Government may offer against the accused at trial, closing the
16       courtroom door to evidence secured by official lawlessness. Respondent is not
        himself a suppressible "fruit," and the illegality of his detention cannot deprive the
17       Government of the opportunity to prove his guilt through the introduction of
        evidence wholly untainted by the police misconduct.

18

19   Crews, 445 U.S. at 474; see also United States v. Brunette, 256 F.3d 14, 19 (1st Cir. 2001) ("The

20       [6]"There is no bright line rule for determining when an investigatory stop crosses the line and becomes an
21   arrest," and the inquiry to determine the same is fact-specific.  Gallegos v. City of Los Angeles, 308 F.3d 987, 991
    (9th Cir. 2002).  The length of time that Vasquez was detained (given the geographical distance between Fresno and
22   Yosemite) and Ranger Foster's declaration in which he states that he requested that Vasquez be arrested and told
    Vasquez that he requested Fresno police arrest him, see E.R. at 31, does lend support to Vasquez's argument that his
23   initial detention was an arrest.

24       [7]Penal Code § 273.5(a) reads in part, "Any person who willfully inflicts upon a person who is his or her
    spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury
25   resulting in a traumatic condition, is guilty of a felony . . . ."  Ranger Foster's declaration only described Vasquez
    holding Rousseau against the truck and did not describe any actual corporal injury, cf. Cal. Pen. Code § 275.3(c);
26   People v. Beasley, 105 Cal.App.4th 1078, 1085 (2004); People v. Abrego, 21 Cal.App.4th 133, 137 (1993), nor did
    it indicate that Vasquez and Rousseau were spouses, parents of mutual children, cohabitating, or formerly spouses or
27   formerly cohabitating.  Cf. People v. Silva, 27 Cal.App.4th 1160, 1166 n.6 (1994).  These omissions lend support to
    Vasquez's argument against probable cause.

28

7

1    usual remedy for seizures made without probable cause is to exclude the evidence wrongfully

2    seized in order to deter future violations of the Fourth Amendment.").

3         In *Studley*, the defendant argued that reversal of her conviction was necessary because

4    neither the arrest warrant nor the information were supported by a sworn oath.  See Studley, 783

5    F.2d at 936-37.  The Ninth Circuit reiterated that an illegal arrest does not void a subsequent

6    conviction, see id. at 937, and then stated, "Studley in no way argues that her conviction was

7    based on evidence derived from any illegal police activities . . .[8]  Thus, any illegality in Studley's

8    arrest does not require reversal of her conviction."  Id.  Despite "improper handling" of the

9    warrant application, Studley's conviction stood.  Id.

10        Here, as in *Studley*, Vasquez's emphasis is on the arrest itself.  There is no argument on

11   appeal that tainted evidence was used to obtain his conviction.  Indeed, Vasquez's motion to

12   dismiss requested dismissal of the case and did not request suppression of evidence.  Even if

13   Vasquez's arrest was illegal and the Magistrate Judge erred in finding probable cause for a

14   violation of Penal Code § 273.5(a), there has now been a conviction and the argued Fourth

15   Amendment infirmity of that arrest will not void this conviction.  Since Vasquez has neither

16   argued nor shown that his conviction was based on tainted evidence, his conviction will not be

17   overturned on the basis of an arrest that arguably violated the Fourth Amendment.  See Crews,

18   445 U.S. at 474; Gerstein, 420 U.S. at 119; Sitton, 968 F.2d at 954-55; Studley, 783 F.2d at 937.

19        With respect to Vasquez's argument regarding improperly delayed presentment, the Court

20   is somewhat troubled that Vasquez was not taken to a magistrate judge in Fresno since he was

21   arrested in Fresno.  Again, the Court will assume without deciding that the Fourth Amendment,

22   Rule 5 and *Mallory*, and the local CJA Plan were violated.  Nevertheless, the remedy of

23   dismissal that Vasquez requests is not  proper.

24

25

26

27        [8]The Ninth Circuit also stated, "Moreover, a prior judicial determination of probable cause is not a
     prerequisite to prosecution by information."  Studley, 783 F.2d at 936.

28

1    The remedy for a violation of the Fourth Amendment's presentment requirement[9] and the

2    rule of *McLaughlin* is exclusion of evidence if it was "fruit of the poisonous tree."  Anderson v.

3    Calderon, 232 F.3d 1053, 1071-72 (9th Cir. 2000), *overruled in part on other grounds*, Bittaker

4    v. Woodford, 331 F.3d 715, 728 (9th Cir. 2003); United States v. Arnett, 2005 U.S. Dist. LEXIS

5    23741, 12-13 (E.D. Cal. 2005).  Because Vasquez requested a remedy that was unavailable, the

6    Magistrate Judge properly denied Vasquez's requested dismissal for violation of the Fourth

7    Amendment.

8    Similarly, the general remedy for a violation of Rule of Criminal Procedure 5[10] and

9    *Mallory* is exclusion of the evidence.  See United States v. Blue, 384 U.S. 251, 255 (U.S. 1966)

10   (citing *Mallory* as an example of applying exclusionary rule); United States v. Cardenas, 410

11   F.3d 287, 293 (5th Cir. 2005); United States v. Dyer, 325 F.3d 464, 470 n.2 (3d Cir. 2003);

12   United States v. Alvarez-Sanchez, 975 F.2d 1396, 1398 (9th Cir. 1992), *rev'd on other grounds*,

13   511 U.S. 350 (1994); Studley, 783 F.2d at 937 n.2; Bayless v. United States, 381 F.2d 67, 70-71

14   (9th Cir. 1967); United States v. Savchenko, 201 F.R.D. 503, 506-07 (S.D. Cal. 2001).  Some

15   authority suggests that dismissal for extreme or egregious violations of Rule 5 may be

16   appropriate.  See United States v. Osunde, 638 F.Supp. 171, 176-77 (N.D. Cal. 1986) (granting

17   dismissal where defendant was held for 106 days before presentment); cf. United States v.

18   Jernigan, 582 F.2d 1211, 1214 (9th Cir. 1978) (despite deliberate delay, refusing to grant drastic

19   remedy of reversal of conviction and dismissal of indictment given presentment after 3 to 4 days

20   from arrest); but see Savchenko, 201 F.R.D. at 507-08.  Assuming that dismissal is an available

21

22       [9]The Fourth Amendment reads, "The right of the people to be secure in their persons, houses, papers, and

23   effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon
     probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the

24   persons or things to be seized."  U.S. Const. Amend. IV.  The Supreme Court has held that the Fourth Amendment
     requires prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following

25   a warrantless arrest, i.e. individuals must be presented or brought before magistrates for a determination of probable
     cause.  See McLaughlin, 500 U.S. at 47, 53; Gerstein, 420 U.S. at 114.

26
         [10]Rule 5 in relevant part provides, "A person making an arrest within the United States must take the

27   defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c)
     provides, unless a statute provides otherwise."  Fed. R. Crim. Pro. 5(a)(1)(A).

28

1   remedy and that Rule 5 was violated, the facts of this case do not show an extreme or egregious

2   violation of Rule 5.  Although not dispositive, it is undisputed that Vasquez was presented to a

3   judicial officer within 48 hours of his arrest.  See E.R. at 7; cf. McLaughlin, 500 U.S. at 56-57.

4   Further, the evidence does not suggest that the rangers were aware that the Magistrate Judge in

5   Yosemite would not be available on Monday May 9, 2005, since the Magistrate Judge himself

6   anticipated being present.  See MDT at 21.  The less than 48 hour delay is nowhere near the 106

7   day delay in *Osunde* and is less than the 3 to 4 day deliberate delay in *Jernigan* that was found to

8   not warrant dismissal.  Cf. Jernigan, 582 F.2d at 1214; Osunde, 638 F.Supp. at 176-77.  Given

9   that suppression of evidence is the general remedy for a Rule 5 violation, and that there is an

10   absence of extreme or egregious delay, the Magistrate Judge properly denied Vasquez's

11   requested dismissal for violation of Rule 5.

12          Finally, with respect to any violation of the local CJA Plan, the Court does not find that

13   this argument has been adequately developed.[11]  Again, assuming that the local CJA Plan was

14   violated, neither party cites authority for what the proper remedy may be for such a violation.

15   Vasquez does not argue that any Sixth Amendment rights have been violated.  In the context of a

16   violation of the Sixth Amendment right to counsel, such "deprivations are subject to the general

17   rule that remedies should be tailored to the injury suffered from the constitutional violation and

18   should not unnecessarily infringe on competing interests."  United States v. Morrison, 449 U.S.

19   361, 364 (U.S. 1981).  The general remedy is to suppress the evidence or to order a new trial if

20   the evidence has been wrongfully admitted and the defendant convicted.  Id. at 365.  "[A]bsent

21

22   [11]The Eastern District of California CJA Plan provision relied upon by Vasquez is General Order No. 323
     at Ch. IX(A) and may be found at http://www.caed.circ9.dcn/newintranet/Documents/General_orders/323.pdf.  This
23   portion the local CJA Plan reads:

24   Federal law enforcement and prosecutorial agencies, probation officers, and pretrial services officers in this district,
     and those acting on their behalf, shall promptly ask any person who is in custody, or who otherwise may be entitled
25   to counsel under the CJA, whether he or she is financially able to secure representation, and shall, in such cases in
     which the person indicates that he or she is not able, notify the Federal Public Defender Office, which shall assign a
26   lawyer to discuss with the person the right to representation and right to appointed counsel, and if appointment of
     counsel seems likely, assist in the completion of financial affidavit (CJA Form 23) and arrange to have the person
27   promptly presented before a magistrate judge of this Court for determination of financial eligibility and appointment
     of counsel.

28

1   demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly

2   inappropriate, even though the violation may have been deliberate." Id.

3          Here, Vasquez has not identified any harm or prejudice that may have been caused by a

4   violation of the local CJA Plan.  Vasquez was, and continues to be, represented by a federal

5   defender and Vasquez has not identified any evidence that was obtained as a result of any

6   violation of the local CJA Plan.  Cf. id.  If the normal remedy for violations of the Fourth

7   Amendment, the Sixth Amendment, and Rule 5 is exclusion of evidence and not dismissal of a

8   case, see id.; Blue, 384 U.S. at 255; Anderson, 232 F.3d at 1071-72; Studley, 783 F.2d at 937

9   n.2, then the Court does not find that dismissal would be an appropriate remedy for a violation

10  the local CJA plan, especially in the circumstances of this case and in the absence of

11  identification of tainted evidence or prejudice.[12]

12         The Magistrate Judge correctly denied Vasquez's requested dismissal on the basis of

13  violations of Rule 5, *Mallory*, the Fourth Amendment, and the CJA plan.[13]

14

15                                        **CONCLUSION**

16         Vasquez argues that the Magistrate Judge erroneously denied his motion to dismiss

17  because his initial detention violated the Fourth Amendment and his continued detention without

18  prompt presentment to a judicial officer violated Rule 5, *Mallory*, the Fourth Amendment, and

19

20         [12]The Court notes that, at the motion to dismiss hearing, the Government represented that the Federal
21  Defender's Office had been notified about Vasquez on the morning of May 9, 2005, and was told that no one was
    available that morning. See MDT at 13-14.  The Government represented that the Federal Defender's Office later
22  said that an attorney would be available for a telephonic presentment in the afternoon, but the Government declined,
    relied on *McLaughlin*'s 48-hour presumption, and conducted no further interviews with Vasquez. See id. at 14-15.
23  The Magistrate Judge stated that he was prepared to accept the Government's representations as statements made by
    an officer of the court and asked Vasquez's attorney, who is from the Federal Defender's Office, if she wished to
24  respond in writing and check office records, to which she responded "No." Id. at 20.

25         [13]As discussed above, the general remedy available to Vasquez for a failure to be promptly presented is
    suppression of tainted evidence.  In *Jernigan*, the Ninth Circuit did state, "Our reading of the record persuades us
26  that agent Horn deliberately delayed arresting Jernigan until a time when, as he well knew, Jernigan would not be
    able to go before a magistrate, have bail reset, and be released. We deplore this kind of behavior, and its repetition
27  may lead us to invoke the drastic remedy, dismissal of the indictment, that Jernigan asks us to invoke." Vasquez has
    not presented evidence or shown the type of deliberate conduct discussed in *Jernigan*.

28

1    the local CJA Plan.  Vasquez argues this Court should find that the Magistrate Judge erred,

2    reverse his conviction, and remand the case to the Magistrate Judge with instructions to vacate

3    the judgment of conviction and enter an order dismissing the charges with prejudice.

4          However, assuming that Vasquez's arguments are correct regarding his initial detention

5    and further detention without presentation to a judicial officer, the relief requested is unavailable.

6    When a conviction has been obtained, the conviction will not be voided due to an arrest that

7    arguably violated the Fourth Amendment.  Rather, evidence obtained as a resulted of an such an

8    arrest is to be excluded.  Further, suppression is the remedy for violation of the Fourth

9    Amendment's presentment requirement and the general remedy for violations of Rule 5 and

10   *Mallory*.  Although some authority suggests dismissal of charges may be appropriate in egregious

11   circumstances, such circumstances have not been shown in this case.  Finally, neither side has

12   presented authority regarding the remedy for violations of a local CJA plans.  The general

13   remedy for violations of the Fourth, Fifth, and Sixth Amendments and Rule 5, however, is

14   suppression of evidence, and Vasquez has identified no tainted evidence or any harm or prejudice

15   that may have resulted from a violation of the local CJA Plan.  Because dismissal is not an

16   available remedy, Vasquez's conviction will not be reversed.

17

18         Accordingly, IT IS HEREBY ORDERED that Appellant's conviction is AFFIRMED.

19

20   IT IS SO ORDERED.

21   **Dated:    April 10, 2007**                    _____/s/ Anthony W. Ishii_____
                                                     UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28